THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN R. REMMERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Case No. 11-4142-JAR <br> BROTHERHOOD OF MAINTENANCE ) <br> OF WAY EMPLOYEES DIVISION ) <br> UNIFIED SYSTEM DIVISION OF THE ) <br> INTERNATIONAL BROTHERHOOD ) <br> OF TEAMSTERS, and ) <br> UNION PACIFIC CORPORATION ) <br> d/b/a UNION PACIFIC RAILROAD, ) <br> ) <br> Defendants. ) <br> _____) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions to dismiss filed by Defendant Brotherhood of Maintenance of Way Employees Division of the Unified System Division of International Brotherhood of Teamsters ("Brotherhood") (Doc. 13) and Defendant Union Pacific Corporation d/b/a Union Pacific Railroad ("Union Pacific") (Doc. 11). This is an action brought under § 301 of the Labor Management Relations Act of 1974 ("LMRA") against Defendant Brotherhood for breaching its duty of fair representation owed to Plaintiff as a member of the union, and against Defendant Union Pacific, Plaintiff's former employer, for breach of the collective bargaining agreement ("CBA") and wrongful constructive discharge.

For a number of reasons, the Court dismisses this case. The Court has no personal jurisdiction of Defendant Brotherhood because of insufficient service of process. And, the Court has no subject matter jurisdiction. First, the LMRA is preempted by another specific federal

1

statute, the Railway Labor Act ("RLA") which governs collective bargaining agreements of railroad employees. Second, under the RLA, the Court lacks subject matter jurisdiction unless the action falls within one of three narrow exceptions. This action clearly does not fall within the "repudiation" exception. Nor does this action fall within the "futility exception," for the Complaint neither pleads that exception, nor pleads facts supporting that exception. And this action does not fall within the "hybrid" exception, for the Complaint fails to plead facts showing that Defendants colluded or conspired to wrongfully discharge or deny the grievance process to Plaintiff. Indeed, the Complaint pleads facts that show that the Defendants operated independently, rather than in concert. Because the Court concludes that it has no personal jurisdiction of the Brotherhood due to insufficient service of process, and no subject matter jurisdiction of the claims against both Defendants, the Court need not reach Union Pacific's alternative ground for dismissal, that the Complaint fails to state a claim for relief for breach of contract and constructive wrongful discharge.

**I.      No Personal Jurisdiction—Insufficient Service of Process**

The Court lacks personal jurisdiction over a defendant where there is insufficient service of process in accordance with Fed. R. Civ. P. 12(b)(5). Service is insufficient where a party serves the wrong person or serves an individual not permitted to accept service.[1] The burden is on the plaintiff to make a prima facie showing that it satisfied the statutory and due process demands for the Court to exercise jurisdiction.[2] Although the parties may submit affidavits in support of a motion to dismiss for insufficient service of process, the Court must give the

---

[1] *Pope v. Boy Scouts of America*, No. 06-2130, 2006 WL 3199423, at *1 (D. Kan. Nov. 3, 2006).

[2] *Id.*

2

plaintiff the benefit of any factual doubt where the facts are contested.[3] Following that standard, the Court finds the following facts relevant to this discussion.

Plaintiff filed this action on October 14, 2011. On February 6, 2012, summons for service of Defendant Brotherhood was issued. On February 9, 2012, 118 days after the Complaint was filed, Plaintiff served the Complaint and summons by certified mail addressed to Defendant Brotherhood at 100 East Sage Street in Lyman, Wyoming, the situs of Brotherhood's post office box, not its place of business. The mail was not addressed to an individual. Teena Bradshaw, an employee of Brotherhood, signed the certificate signifying delivery of the package. Bradshaw is not an officer, manager, partner, or managing agent of Brotherhood; and she does not have authority under Brotherhood's bylaws to accept service of process. In signing for the mail, Bradshaw made no oral representations to Plaintiff or written representations on the certificate of delivery that she had authority to accept service of process.

Defendant Brotherhood argues that under Fed. R. Civ. P. 4(h) and (m), service of process on Brotherhood was insufficient,[4] and that Brotherhood has consequently not been served within the requisite 120 days.[5] Service within a judicial district of the Unites States and on a corporation, partnership or association can be effectuated in one of two ways under Rule 4(h). One method is delivery of a copy of the summons and complaint to an officer, a managing or general agent, or an agent authorized by appointment or law to accept service of process.[6]

---

[3]*Id.*

[4]Fed. R. Civ. P. 4(h).

[5]Fed. R. Civ. P. 4(m).

[6]Fed. R. Civ. P. 4(h)(1)(B).

3

Plaintiff offers nothing to counter Brotherhood's assertion that Bradshaw is not an officer, manager or agent authorized by appointment of law to accept service. Rather, Plaintiff argues that Bradshaw is a general agent because she is authorized to pick up, open and distribute incoming mail.

The second method of service on a corporation, partnership or association under Rule 4(h) is to effectuate service under Rule 4(e)(1),[7] which in turn allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[8] Plaintiff and Defendant Brotherhood argue that the Kansas statutes support their respective positions. K.S.A. § 60-303 governs the method of service, and service by certified mail is one appropriate method of service.[9] Plaintiff served the summons and Complaint by certified mail.

But the inquiry does not end there, for K.S.A. § 60-304 governs on whom service must be made. With respect to corporations, partnerships or associations, service must be made on: either an officer, manager, partner, resident or managing or general agent;[10] the person having charge of the defendant's business office where the summons and complaint is served;[11] or an agent authorized by appointment or by law to receive service.[12] K.S.A. § 60-304 also requires that "service by return receipt delivery on an officer, partner or agent must be addressed to the

---

[7] *See* Fed. R. Civ. P. 4(h)(1)(A).

[8] Fed. R. Civ. P. 4(e)(1).

[9] K.S.A. § 60-303(c)(1).

[10] K.S.A. § 60-304(e)(1).

[11] K.S.A. § 60-304(e)(2).

[12] K.S.A. § 60-304(e)(3).

4

person at the person's usual place of business."

As Defendant Brotherhood posits, Plaintiff's service failed in several respects. First, the summons and Complaint were addressed to 100 East Sage Street in Lyman, Wyoming, which Defendant Brotherhood asserts was the situs of its post office box, not its place of business. Plaintiff does not refute that this was the location of Brotherhood's post office box.

Moreover, the summons and Complaint were neither addressed to Bradshaw, nor to any other individual associated with Defendant Brotherhood. For that reason, service was not in compliance with K.S.A. § 60-304. In *Taylor ex rel. Gibbens v. Medicalodges, Inc.*,[13] the plaintiff sent a copy of the summons and complaint to the corporate defendant's post office box, not its place of business. Like this case, the mail was addressed to the corporate defendant, not to an officer, manager, or individual in charge of the defendant's business office.[14] And, like this case, the person who signed for the mail at the post office, was not an officer or manager, but a mailroom clerk.[15] While acknowledging that the plaintiff had the burden of proving the mailroom clerk was the defendant's agent, and acknowledging that there remained a disputed issue of fact on the point, the court found that because the envelope was addressed to defendant rather than to an officer, manager or agent at defendant's place of business, there was no valid service of process under K.S.A. § 304(e).[16] Similarly, in *Porter v. Wells Fargo Bank, N.A.*,[17] the court found service to be insufficient when plaintiff sent the summons and complaint by certified

---

[13]236 P.3d 573 (table), 2010 WL 3324408 (Kan. Ct. App. Aug. 20, 2010).

[14]*Id.* at *2.

[15]*Id.*

[16]*Id.* at *3.

[17]257 P.3d 788 (Kan. Ct. App. 2011).

5

mail to the corporate defendant, not addressed to an individual officer, manager or agent, and to a post office box, not the defendant's place of business.[18]  The court noted that "the person who is sent to pick up mail at a corporate post office box address is rarely the person in charge of the business office."[19]

Moreover, the Court finds that service was insufficient under the federal rule or state statute because Plaintiff has failed to show that Bradshaw was a "general agent."  Bradshaw avers in her affidavit that she was an at-will employee whose job duties included picking up, opening and distributing the mail to other employees in Defendant Brotherhood's Lyman, Wyoming office.  Plaintiff asserts that Bradshaw's authority to pick up, open and distribute mail, sufficed to make her a general agent.  The Court disagrees.  Plaintiff argues, citing to cases from other states, that one with apparent authority is a general agent for purposes of accepting service of process.  But Plaintiff makes no showing that Bradshaw had apparent authority, for Bradshaw did not represent to Plaintiff orally, or in writing on the return receipt, that she was an agent.  Nor did Bradshaw otherwise claim to have authority.

Both the Kansas Court of Appeals and this Court have held that a general agent is a person who is an integral part of a business organization who does not require fresh authorization for each transaction.[20]  All the Plaintiff has demonstrated here is that Bradshaw had authority to pick up, open and distribute the mail, not that she was an integral part of the business, nor that she engaged in business transactions without need for fresh authorization.

---

[18]*Id.* at 791.

[19]*Id.*

[20]*Bd. of Jefferson Cnty. Comm'rs v. Adcox*, 132 P.3d 1004, 1012–13 (Kan. Ct. App. 2006); *Masek Distrib., Inc. v. First State Bank & Trust Co.*,908 F. Supp. 856, 862 (D. Kan. 1995).

Plaintiff has not made the requisite prima facie showing that Bradshaw was a general agent.

Plaintiff argues that even if service of process was insufficient, it was not fatally defective, for it was in substantial compliance with the rules and statutes, pursuant to K.S.A. § 60-204, which provides that

> [s]ubstantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property."[21]

Kansas courts have construed "substantial compliance" under K.S.A. § 60-204 the same way they have construed "substantial compliance" under K.S.A. § 12-105b, the statute that sets out the requirements for serving notice on defendants in an action brought under the Kansas Tort Claims Act.[22]  Thus, "substantial compliance" under K.S.A. § 60-204 means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."[23] While the courts have not parsed this language and defined what every reasonable objective of the statute is, this Court finds that the core of the statute is to ensure that service of process is made on an appropriate person in authority, or that person's authorized agent, in a manner that will ensure that Plaintiff can ascertain that the appropriate person or agent received service. Thus, while certified mail is appropriate, the mail must be directed to an authorized person, not just to the name of the corporate defendant.  To better ensure that an authorized person receives the mail, it should be delivered to the place of business, not a mail drop or post office box.  And, to the extent that an authorized person's agent receives service, Plaintiff should be able to

---

[21]K.S.A. § 60-204.

[22]*See Fisher v. DeCarvalho*, 260 P.3d 1218, 1225–26 (Kan. Ct. App. 2011).

[23]*Id*. at 1126 (quotation omitted).

7

ascertain and confirm that, through the agent's oral representations, or the agent's written representations on the return receipt.

In *Porter*,[24] the court rejected an argument that service on a corporate defendant by certified mail, addressed to the defendant at a post office box, constituted substantial compliance. And, although it involved an individual rather than corporate defendant, the Court finds instructive the Kansas Court of Appeals' application of K.S.A. § 60-204 in *Fisher*.[25] There, the plaintiff's efforts to serve the individual defendant failed under K.S.A. § 60-303, for plaintiff failed to first attempt service at the defendant's residence before attempting service by certified mail at the defendant's place of business.[26] The plaintiff's efforts to serve the proper person, pursuant to K.S.A. § 60-304 also failed, for the plaintiff failed to effectuate service on defendant or defendant's authorized agent; and the person who signed for the mail did not express that they were signing as defendant's agent or with defendant's authority.[27] Under those facts, the court held that the plaintiff did not substantially comply with K.S.A. § 60-304 when the plaintiff failed to satisfy the prerequisites for service at a defendant's place of business, did not use certified mail with restricted delivery,[28] and did not actually obtain service on the defendant or the defendant's authorized agent. The court further held that only when there is substantial compliance with some statutory method of service of process, will irregularities or omissions be

---

[24] 257 P.3d 788, 791 (Kan. Ct. App. 2011).

[25] 260 P.3d at 1225–26.

[26] *Id.*

[27] *Id.*

[28] The requirement that certified mail be delivered by restricted delivery was removed when K.S.A. § 60-304 was amended in 2010.

ignored, and then only if the party to be served was made aware that an action or proceeding was pending.[29]

The facts in this case are starkly different than those in *Sellens v. Telephone Credit Union*,[30] a case upon which Plaintiff relies. In *Sellens,* service on the defendant, a credit union, was accomplished by hand delivery of the summons and complaint to the defendant's place of business.[31] The summons and complaint were handed to an employee who worked as a secretary for the credit union. Unlike here, the papers went to the defendant's place of business, not to a post office box. Further, the process server told the secretary he had a summons to serve and he asked her who could accept the summons. The secretary told the process server that she could accept the summons;[32] unlike here, where Bradshaw took delivery of the mail without any representation that she was authorized to accept service of a summons and complaint. In *Sellens,* Judge Marten reasoned that because the summons and complaint were left with someone who appeared to have charge of the office, plaintiff had substantially complied with service of process under Kansas law.[33]

Here, Plaintiff urges that Defendant Brotherhood was aware of this action, and thus Plaintiff's irregularities or omissions should be ignored. But, it is notable that the summons and complaint were not addressed to an officer, manager or agent nor were they delivered to Defendant Brotherhood's place of business. Neither through delivery to the place of business,

---

[29]*Fisher*, 260 P.3d at 1226–27.

[30]189 F.R.D. 461 (D. Kan. 1999).

[31]*Id*. at 463.

[32]*Id.*

[33]*Id*. at 465.


nor in specifically addressing it to an authorized individual did this piece of mail appear to be anything other than any other ordinary piece of certified mail.  In short, Plaintiff failed to alert Defendant Brotherhood to the filing of this action, by addressing the mail to the attention of a key person, sending the mail to the place of business, where it was more likely an authorized person would be present, or by ensuring through oral or written representations that the person who received the mail was authorized to accept service of process.  Under these facts, even if Defendant Brotherhood was aware of the action, that alone does not constitute substantial compliance.[34]

Accordingly, the Court cannot conclude that Plaintiff substantially complied with the Kansas statutes or the federal procedural rules for service of process.  Here, service was attempted on the 118th day after Plaintiff filed his Complaint.  Thus, service has not been properly made on Defendant Brotherhood within the 120 day time limit set forth in Rule 4(m).  Plaintiff has not mentioned any cause, much less good cause for his failure to timely serve Defendant Brotherhood.  Thus, the Court concludes that Defendant Brotherhood should be dismissed without prejudice, pursuant to Fed. R. Civ. P. 4(m).  Notably, as discussed below, even if the Court had personal jurisdiction of Defendant Brotherhood, the Court lacks subject matter jurisdiction of this action, and thus dismisses this entire action on that ground.

## II.     No Subject Matter Jurisdiction

Defendant Union Pacific moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, must have a statutory

---

[34]*See Fisher*, 260 P.3d at 1227–28.

or Constitutional basis to exercise jurisdiction.[35]  A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[36]  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[37]  Thus, Plaintiff bears the burden of showing why the case should not be dismissed.  Mere conclusory allegations of jurisdiction are not enough.[38]

Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack.  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[39]  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[40]

---

[35]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage,* 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

[36]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[37]*Montoya*, 296 F.3d at 955.

[38]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999).

[39]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

[40]*Id*. at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325; *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

### A.     Facts Alleged in the Complaint

In this case, Defendant Union Pacific makes a facial attack on the complaint, so the Court accepts the allegations in the complaint as true. Plaintiff began his employment with Union Pacific in about 1979. On March 25, 2011, Union Pacific directed Plaintiff to participate in a random drug testing. Sometime before March 30, 2011, while Plaintiff was away from the job site and while other employees had access to a company vehicle, Union Pacific searched the vehicle and allegedly found drug paraphernalia. That same day, Union Pacific notified Plaintiff that he would be out of service until an investigation was completed. On April 1, 2011, the testing services group reported to Union Pacific that Plaintiff's drug test results were negative, indicating the presence of no drugs. Pursuant to company policy and practice, employees who are randomly selected for drug testing are allowed to return to work upon receipt of negative results.

But on April 15, 2011, Union Pacific proposed termination of Plaintiff. Plaintiff's union, Defendant Brotherhood, was assisting Plaintiff in challenging his placement out of service and the proposed termination through the established grievance procedure. On April 15, 2011, Brotherhood's representative, David Scoville, rather than challenging Union Pacific's evidence and rather than fighting for Plaintiff's continued employment, encouraged Plaintiff to resign to avoid dismissal. Brotherhood failed to assert Plaintiff's known positive work history or otherwise challenge Plaintiff's removal from his employment without just cause.

The Complaint further asserts that Defendant Brotherhood's representation of Plaintiff amounted to nothing more than an arbitrary or perfunctory act. Brotherhood breached its duty of fair representation. And, Union Pacific's threatened termination of Plaintiff was the proximate

cause of Plaintiff surrendering his employment and as such constitutes a wrongful constructive discharge.

      **B.**      **Jurisdiction preempted by Railway Labor Act**

As Defendant Union Pacific notes, although Plaintiff purports to bring this action under section 301 of the LMRA,[41] because Plaintiff is an employee of a railroad, his breach of contract claim against Defendant Union Pacific should be brought under the RLA.[42] The LMRA does not apply to a claim by a railroad employee;[43] for railroad labor relations are governed by the RLA, and private causes of action by railroad employees are specifically excluded from coverage under the LMRA.[44] Plaintiff concedes this in his response to Union Pacific's motion to dismiss.

Plaintiff also concedes that his breach of contract action is a "minor dispute" within the meaning of the RLA,[45] such that exclusive jurisdiction is vested with the National Railroad Adjustment Board and the Court has no subject matter jurisdiction,[46] unless this action falls within an exception to such preemption under the RLA. Under the RLA, there is a mandatory arbitral mechanism that vests exclusive jurisdiction over major disputes, defined as "the formation of collective bargaining agreements or efforts to secure them," and minor disputes,

---

[41] 29 U.S.C. § 185(a).

[42] 45 U.S.C. §§ 151–163.

[43] *Nicolaisen v. Chicago & Nw. Transp. Co.*, No. 89-2430, 1991 WL 237619, at *10 (D. Kan. Oct. 30, 1991) (citing *Sheehan v. Union Pac. R.R.*, 576 F.2d 854, 855 (10th Cir.), *rev'd on other grounds*, 439 U.S. 89 (1978)).

[44] *Id.*; *see also* 29 U.S.C. §§ 142(3),152(3).

[45] 45 U.S.C. §151a.

[46] *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 94 (1978); *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 321-24 (1972) (holding that railroad employee's claim for wrongful discharge in violation of collective bargaining agreement is preempted by RLA); *see also Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 835 (10th Cir. 1996).

defined as "disagreements over the meaning of a bargained-for-labor agreement" that "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules or working conditions."[47] Plaintiff concedes this point as well, inasmuch as Plaintiff argues that the Court has subject matter jurisdiction because this case falls within an exception to the preemption rules of the RLA.

There are three exceptions to National Railroad Adjustment Board's exclusive jurisdiction of minor disputes between an employee and a railroad: (1) the repudiation exception—when the employer repudiates the private grievance machinery; (2) the futility exception—when resort to administrative remedies would be futile; and (3) the hybrid exception—when the employer is joined in a claim against the union based on the breach of the duty of fair representation.[48] Plaintiff does not argue that the repudiation exception applies; nor does the Complaint allege such. Plaintiff argues that the futility and hybrid exceptions apply.

          1.      **Futility exception not pled and not applicable**

Plaintiff argues that the Complaint pleads sufficient facts to demonstrate the applicability of the futility exception, in that paragraph 17 of the Complaint states that the "Union did not challenge the Railroad's evidence and fight for the Plaintiff's continued employment [sic] encouraged Plaintiff to resign to avoid dismissal," and paragraph 20 states that the "Union's representation amounted to nothing more than an arbitrary or perfunctory act and as such

---

[47] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994) (quoting 45 U.S.C. §151a).

[48] *Sisco v. Consol. Rail Corp.*, 732 F.2d 1188, 1190 (3d Cir. 1984) (citing *Czosek v. O'Mara,* 397 U.S. 25, 29–30 (1970); *Glover v. St. Louis-S.F. Ry,* 393 U.S. 324, 329–31 (1969); *Goclowski v. Penn Cent. Transp. Co.,* 571 F.2d 747, 758–60 (3d Cir. 1977)).

constitutes a breach of its duty of fair representation." As Defendant Union Pacific points out, however, the Complaint does not even allege in a conclusory fashion that the grievance proceedings already instituted would be futile. The Tenth Circuit has held that a bald allegation of futility, which this Complaint lacks, would be insufficient, as the "futility of the contractual or administrative remedy must clearly appear beyond mere conclusionary language in a complaint, for otherwise the doctrine of exhaustion would be dissipated by mere form and the door to the courts could be opened by prediction rather than by jurisdictional fact."[49]

Viewed in the light most favorable to Plaintiff, this Complaint alleges that the union was representing and assisting Plaintiff, through the "established grievance procedure," in challenging his placement out of service despite the negative drug test, and in challenging the proposed termination. But on April 15, 2011, rather than challenging Union Pacific's evidence, asserting Plaintiff's positive work history, and fighting for Plaintiff's continued employment, the union representative encouraged Plaintiff to resign. The Complaint does not allege that continuing with the established grievance procedure would have been a hollow futility. At best the Complaint alleges that Plaintiff relied upon the union representative's bad advice to resign rather than challenge the employer's actions. But that does not demonstrate that Plaintiff could not have proceeded with the grievance procedure. In fact, under the RLA, the employee has the right to pursue the grievance on their own; they need not rely upon the union to prosecute their grievance.[50] The Complaint has not plead and cannot show that Plaintiff's prosecuting the grievance would have been a futile act simply because the union failed to prosecute the

---

[49]*Transp. Workers Union of Am., AFL-CIO v. Am. Airlines, Inc.*, 413 F.2d 746, 751(10th Cir. 1969) (citing *Glover*, 393 U.S. at 330–31).

[50]*See Masy v. N.J. Transit Rail Operations, Inc.* 790 F.3d 322, 326 (3d Cir. 1986) (citing 45 U.S.C. § 153).

grievance to his satisfaction.[51] And, the Complaint has pled no other facts that would indicate that the administrative process would not have potentially provided the relief Plaintiff sought.

### 2. Hybrid exception not applicable

Plaintiff also argues that the hybrid exception to the exclusive jurisdiction of the RLA applies. This exception applies to so-called hybrid cases in which an employee joins a claim against the employer railroad with a claim against his union for breach of the union's duty of fair representation. But in such a case, the employee must allege that the employer and union conspired or colluded to bring about the employee's discharge or to deny the employee access to the grievance procedure.[52]

Here, the Complaint does not allege that Defendants Union Pacific and Brotherhood colluded or conspired to effectuate Plaintiff's discharge or to deny his access to the grievance procedures. In fact, the Complaint alleges the contrary, that Defendant Brotherhood assisted Plaintiff in pursuing the grievance procedures, to challenge both his placement out of service and the proposed termination. But Plaintiff voluntarily resigned after Defendant Brotherhood encouraged Plaintiff to resign in lieu of further pursuing the grievance process. The Complaint further alleges that Defendant Brotherhood breached its duty of fair representation by "not being fully aware of the details associated with the investigation of the Railroad and failing to undertake any investigation of the circumstances." The Complaint does not plead collusion. Rather, the Complaint pleads that Defendant Brotherhood was ignorant of Defendant Union

---

[51]*See Nicolaisen v. Chicago & Nw. Transp. Co.*, No. 89-2430, 1991 WL 237619, at *11 (D. Kan. Oct. 30, 1991) (finding plaintiff failed to show futility exception under the RLA despite union's failure to advance her grievance, because under her collective bargaining agreement she could have prosecuted her grievance herself).

[52]*Robinson v. Pub. Law Bd. No. 5914*, 63 F.Supp. 2d 1266, 1271 (D. Colo. 1999) (citing *Sheehan,* 439 U.S. at 93;*Richins v. S. Pac. Co.*, 620 F.2d 761 (1980)) .

16

Pacific's investigation and took no steps to educate itself or investigate. This, the Complaint alleges, amounted to no more than an "arbitrary and perfunctory act" of representation by Defendant Brotherhood. There simply is no allegation that Defendant Brotherhood communicated with Union Pacific and acted in concert in either failing to investigate or in encouraging Plaintiff to resign in lieu of termination. Because the Complaint not only does not allege conspiracy or collusion, but alleges facts that show that the union did not communicate or consort with the employer, the hybrid exception does not apply.

### III.   Conclusion

Because Plaintiff failed to satisfy the service of process requirements in almost every respect, neither addressing the certified mail to an individual, delivering the certified mail to Defendant Brotherhood's place of business, nor delivering the mail to an individual authorized by law, appointment or agency to accept service, the Court lacks personal jurisdiction of Defendant Brotherhood. And, because the Complaint fails to plead facts by which this action could fall within one of the narrow exceptions to the exclusive jurisdiction of the RLA and in fact pleads facts contrary to such exceptions, the Court has no subject matter jurisdiction of this action.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Brotherhood's Motion to Dismiss (Doc. 13) is **granted.**

**IT IS FURTHER ORDERED** that Defendant Union Pacific's Motion to Dismiss (Doc. 11) is **granted.**

**IT IS SO ORDERED.**

Dated: June 27, 2012

　　　　　　　　　　　　　　　　　　　　　　 S/ Julie A. Robinson

                                        JULIE A. ROBINSON  
                                        UNITED STATES DISTRICT JUDGE